### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF ILLINOIS
### URBANA DIVISION
_____

| | | |
|---|---|---|
| GARY L. KNOX, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | **Case No. 11-CV-2179** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

### <u>OPINION</u>

On July 20, 2011, Petitioner, Gary L. Knox, filed a pro se Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (#1). Petitioner also filed supporting memoranda (#2, #3, #13), an affidavit in support (#7), and numerous other motions (#4, #5, #6, #8, #9, #10, #11, #12). On September 19, 2011, the Government filed its Response to Petitioner's Motion Pursuant to 28 U.S.C. § 2255 (#16). On November 14, 2011, Petitioner filed a Reply to the Government's Response (#18). Subsequently, Petitioner filed three additional memoranda (#19, #20, #21).

This court notes that Petitioner's many filings are lengthy, rambling, and difficult to decipher. It appears to this court that Petitioner believes that if he files enough paper, and says the same thing enough times, the court will conclude that there must be some merit to his arguments. However, after careful review of all of Petitioner's filings, this court agrees with the Government that Petitioner has presented nothing to establish that the indictment was insufficient, that he is "actually innocent" of any of the charges to which he knowingly pled guilty, or that his counsel was ineffective in any way.

Accordingly, this court rules as follows: (1) Petitioner's pro se Motion to Vacate, Set Aside, or Correct Sentence (#1) is DENIED; (2) because Petitioner's Motion under § 2255 is completely without merit, Petitioner's additional motions (#4, #5, #6, #8, #9, #10, #11, #12) are also DENIED; and (3) because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability is DENIED.

## FACTS

In Case No. 05-CR-20029, Petitioner was charged, along with his co-defendants Frank Kelly Ciota and Dennis Wiese, Jr., in a 42-page superseding indictment which alleged various counts of bank fraud, mail fraud, wire fraud and conspiracy to commit money laundering. Specifically, Petitioner was charged with three counts of bank fraud, in violation of 18 U.S.C. § 1344, one count of wire fraud, in violation of 18 U.S.C. § 1343, six counts of mail fraud, in violation of 18 U.S.C. § 1341, and one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). The superseding indictment set out in a detailed and specific manner the actions of Petitioner, Ciota and Wiese in devising and executing a broad and long-lasting scheme to defraud various real estate lenders, including Central Illinois Bank, Champaign, Illinois, a federally-insured bank, real estate sellers, real estate buyers, and others. The superseding indictment stated that Petitioner and his co-defendants participated in more that 150 fraudulent real estate sale and financing transactions and "fraudulently obtained a total of more than $3,000,000 from the transactions, which they converted to their personal use and used to promote their ongoing fraudulent scheme."

The superseding indictment alleged that Petitioner and his co-defendants "reaped the benefits of the scheme by causing the payment of appraisal fees to Defendant WIESE and by Defendants KNOX and CIOTA converting the profits from the fraudulent transactions to their personal use and using such profits to promote the ongoing fraudulent scheme (emphasis added)." The superseding indictment alleged that Petitioner and Ciota conspired to launder the proceeds of the criminal scheme. The superseding indictment alleged that, as part of this conspiracy, Petitioner and Ciota engaged in numerous financial transactions which involved as much as $1,000,000 in bank cashier's checks and personal bank checks. The superseding indictment alleged that these transactions involved "the proceeds of their fraudulent scheme, with the intent to promote the carrying on of such scheme and with the intent to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the scheme."

On April 19, 2006, Petitioner, who was represented by appointed counsel Robert Alvarado, pleaded guilty to all 11 counts of the superseding indictment. On that date, this court conducted a lengthy and thorough colloquy with Petitioner pursuant to Rule 11 of the Federal Rules of Criminal Procedure. At the hearing, Petitioner was administered an oath and was informed by this court "that means that the answers to my questions will subject you to the penalty of perjury for making a false statement," criminal offenses for which consecutive sentences of imprisonment could be imposed. Petitioner then stated that he was 60 years old, had completed high school and had attended Millikin University for four and one half years. He stated that he also received an accreditation from the

Northwestern School of Mortgage Banking. Petitioner stated that he was satisfied with the representation of his attorney. He also stated that he had read the lengthy superseding indictment in this case "about 500 times" and indicated that he was fully conversant with it. Petitioner therefore waived reading the indictment at the hearing. This court then carefully and thoroughly explained to Petitioner all of the rights he was giving up by pleading guilty. This court also informed Petitioner that it would not accept his plea of guilty "unless I am satisfied that you're doing that because you are, in fact, guilty and that there is a factual basis to support that."

This court then discussed the sentences which could be imposed for Petitioner's convictions. When this court asked Mr. Alvarado regarding Petitioner's understanding of the potential guideline sentence he faced, Mr. Alvarado stated: "Mr. Knox is a very intelligent client. He's very knowledgeable about the federal sentencing guidelines. We've discussed many possible enhancements. Suffice it to say we have talked about long periods of imprisonment that could be imposed in this case." After this court was satisfied that Petitioner understood the possible sentences he faced and that no one had promised him that this court would impose a particular sentence, Petitioner agreed that his sentence was "an unknown and uncertainty" he was willing to accept as a risk.

The prosecutor, Timothy A. Bass, then set out the elements of the offenses Petitioner was pleading guilty to: bank fraud, wire fraud, mail fraud, and conspiracy to commit money laundering. Mr. Bass then proceeded to set out a lengthy factual basis for the guilty pleas as follows:

Your Honor, the government's evidence, in sum, would be that between 1999 and continuing into 2005, in the Central District of Illinois and elsewhere, the defendant and his codefendants, Mr. Ciota and Mr. Wiese, devised and participated in a scheme to defraud various real estate lenders, including Central Illinois Bank of Champaign, a federally insured bank, real estate buyer - - real estate sellers, real estate buyers, and others to obtain their money and property by means of false and fraudulent pretenses, representations, and promises.

The object of the defendants' scheme to defraud was to engage in the practice of fraudulent real estate "flipping" whereby the defendants made false representations, including fraudulent real estate appraisals prepared by Defendant Wiese and used by Defendants Knox and Ciota, that caused real estate owners to sell, real estate buyers to purchase, and lending institutions to finance real estate properties that were sold at prices which the defendants caused to be fraudulently inflated to substantially higher than their reasonable value.

The defendants then reaped the benefits of the scheme by causing the payment of appraisal fees to Defendant Wiese and by Defendants Knox and Ciota converting the profits from their

fraudulent transactions to their personal use and by using such profits to promote the ongoing scheme.

In seeking to achieve the objectives of their scheme the defendants devised and participated in, Mr. Knox in particular devised and participated in a total of more than 150 fraudulent real estate sale and financing transactions totaling more than $8 million. The defendants fraudulently obtained a total of more than $3 million from the transactions which they converted to their personal use and used to promote their ongoing fraudulent scheme.

As a result of the scheme, the defendants caused substantial losses to various mortgage lenders and real estate sellers and buyers and caused buyers to file or face bankruptcy.

Particulars of the scheme, Your Honor, are set forth in detail in pages 5 through 13 of the indictment. And in essence, what those pages set forth is that Mr. Knox and his codefendant, Mr. Ciota, would go out and identify various owners of real estate, rental real estate to sell. Certain representations were made to various sellers whereby in most cases those sellers would agree to sell a piece of property at a particular price.

In one instance, though, however, regarding Count 1, Mr. Knox and Mr. Ciota sold a piece of real estate - - in two instances, Count 1

and Count 2, Mr. Knox and Mr. Ciota sold pieces of real estate without the approval of the owner of the real estate.

But in the remainder of the instances of these transactions, the seller would have agreed to sell a piece of property at a particular price. Mr. Knox and Mr. Ciota would then go out with Mr. Wiese, and those properties would be fraudulently inflated to a value much higher than their actual value. They then would locate or contact various real estate buyers to invest in this real estate and make fraudulent representations to those buyers, including representations as to the worth of the property and how much money the buyers could make by buying the property.

Once the seller and buyer were located, then a fraudulent price established supported by an appraisal fraudulently rendered by Mr. Wiese, the defendants then would attempt to close the transaction and in most cases utilizing a mortgage broker who would assist the defendants in fraudulently obtaining financing from various lending institutions.

Those financing transactions were fraudulent because they included a host of false statements, including the fact - - including falsely representing that these buyers were making down payments on

these properties when, in fact, no such down payments were being made.

Also when the loans would close, Mr. Knox would in many instances fraudulently elicit the cooperation of a particular mortgage broker who would advance Mr. Knox the loan proceeds from the transactions before the loans would even close. He would then go out and get cash - - cash a check received by, from the mortgage broker and convert that check into other checks, one of which would be used to fraudulently represent that a down payment had been made.

Once these loans were closed, then the difference between the value of the property and the inflated sale price would generate significant amounts of money, which then would largely be received by Mr. Knox and Mr. Ciota in that amount totaling more than $3 million for all 150 or more of the transactions.

Mr. Bass stated that was, in sum, the factual basis as to Counts 1 through 10. Mr. Bass then continued:

As to Count 11, Mr. Knox and Mr. Ciota between 2002 and 2005 knowingly and intentionally conspired with each other to commit various offenses in violation of 18 USC Section 1956, and essentially what the conspiracy involved was that Mr. Knox and Mr. Ciota conspired to conduct transactions, financial transactions which

were designed to promote their ongoing scheme or to conceal and disguise the location, source, ownership and control of the proceeds of those transactions, all of which involved the proceeds of specified unlawful activity; namely, the bank fraud, wire fraud, and mail fraud counts that are charged in Counts 1 through 10, as well as other counts that are not charged.

As a result of that conspiracy, Your Honor, the defendants, in fact, went out and engaged in many numerous financial transactions, including the issuance and negotiation of more than one million dollars in bank cashier's checks and personal bank checks involving the proceeds of the scheme with the intent, as I mentioned earlier, to promote the scheme or to conceal and disguise the proceeds generated from the scheme.

Following this recitation of the factual basis of Petitioner's plea of guilty to all 11 counts of the superseding indictment, Mr. Alvarado stated that he and Petitioner had viewed the discovery in the case and went through all of the evidence supporting the 11 counts of the indictment. Mr. Alvarado stated that, based upon his professional evaluation of the discovery, he agreed with the factual basis presented by Mr. Bass, and stated that "Mr. Knox is admitting every element necessary to support convictions for all eleven counts of the indictment." Mr. Alvarado stated, however, that Petitioner was contesting the scope of the fraud and the total loss amount at stake. This court then stated

its understanding that Petitioner was agreeing that the factual basis would support the elements of the 11 counts and was pleading guilty to the 11 counts, "but he would leave open for sentencing the scope as to whether it encompasses this many transactions and this much money." Mr. Alvarado replied, "That sums it up precisely."

This court then had the following exchange with Petitioner:

[Court] And, Mr. Knox, is that, in fact, the way you are framing your plea today: "I'm pleading to the eleven counts. I agree with the factual basis. I'm pleading guilty because I am, in fact, guilty; but at this point, I'm not admitting 150 transactions totaling more than $8 million"?

[Petitioner] That's correct, Your Honor. Matter of fact, I was having a hard time deciphering how to do this, and Mr. Alvarado instructed me just what that he talked to you about and - -

[Court] Limiting it to the eleven counts and the elements - -

[Petitioner] Yes.

[Court] - - not the broader picture which will be presented to me at sentencing?

[Petitioner] That's correct.

[Court] Okay. So, you have no problem in admitting your guilt to the elements in the eleven counts and the ten specific instances set forth in the superseding indictment? You're pleading guilty because you are,

in fact, guilty of these ten specific offenses and the elements of all
eleven offenses?

[Petitioner] Yes, Your Honor.

[Court] And nobody's forced you to do that?

[Petitioner] No.

[Court] Threatened you in any way?

[Petitioner] No.

[Court] You're pleading guilty because you, in fact, did what the
government's alleged in those ten specific instances; and you're also
guilty of the conspiracy to commit money laundering as set forth in
the indictment, but not admitting more than 150 fraudulent real estate
transactions totaling more than $8 million?

[Petitioner] That's correct.

This court did not stop there. This court then had a discussion with Petitioner about
some of the specific allegations in the superseding indictment, with Petitioner providing
an explanation of how some of the transactions worked. In doing so, Petitioner agreed
that Wiese "made inflated appraisals that assisted in this scheme" which was "part of this
fraudulent scheme, putting together paper-inflated appraisals, transactions, money
received" with Petitioner and Ciota converting the "profits from the fraudulent sales to
their personal use" and "to promote the ongoing fraudulent scheme." Following this

discussion, this court asked, "So, in effect, the money ultimately comes to you and Mr. Ciota?" Petitioner replied, "That is correct." The following exchange then took place:

> [Court] And that happened - - and I'm not going to talk about the number - - that happened in the transactions that are listed in the ten counts, and you're not denying that?

> [Petitioner] I'm not denying that.

> [Court] And you're asking me at this time to accept your plea of guilty to the eleven counts, enter a judgment of conviction, vacate the final pretrial on Friday, vacate the jury trial set on May the 1st, and set this matter for sentencing, is that correct?

> [Petitioner] That is correct.

> [Court] And you're doing it of your own free will because the discovery you've reviewed supports the plea; the factual basis supports it; you did, in fact, do what the government's alleged in these eleven counts as to the elements and as to the crime of bank fraud, wire fraud, mail fraud, and conspiracy to commit money laundering?

> [Petitioner] That is correct.

This court then accepted Petitioner's guilty plea and a sentencing date was set. The sentencing hearing was continued several times.

On April 18, 2007, approximately one year after his guilty plea, Petitioner filed lengthy pro se motions attacking his guilty plea and claiming ineffective assistance of

counsel. On May 8, 2007, the Government filed a Response to Petitioner's pro se Motions. The Government argued that, in his pro se Motions, Petitioner had asserted a number of unsupported claims of involuntariness of his guilty plea, innocence and ineffective assistance of counsel. The Government contended that Petitioner's unsupported claims of error and innocence were plainly frivolous, especially in light of his admissions under oath to this court during his guilty plea hearing.

On May 10, 2007, a hearing was held before this court. This court concluded that, because Petitioner claimed that he was denied the effective assistance of counsel, Mr. Alvarado could no longer represent him without the appearance of a conflict of interest. A hearing was scheduled for June 1, 2007, to allow Petitioner to determine whether he wanted to proceed pro se or wanted new counsel appointed to represent him.

On May 31, 2007, this court entered a lengthy Opinion. This court denied Petitioner's Motion to Dismiss Indictment. This court specifically found that the superseding indictment was sufficient, noting that it "sets out the elements of all the offenses charged and, in fact, includes much factual detail." This court also denied Petitioner's Motion for Relief from Change of Plea. This court agreed with the Government that Petitioner's arguments contradicted the statements he made, under oath, during his guilty plea hearing and were completely without merit. As far as Petitioner's Motion to Withdraw Guilty Plea, this court rejected some of Petitioner's arguments but concluded that a hearing would be necessary regarding Petitioner's claims of ineffective

assistance of counsel. This court noted, however, that Petitioner would have a difficult time succeeding on that claim.

On June 1, 2007, a hearing was held and J. Steven Beckett was appointed to represent Petitioner. Subsequently, Petitioner was represented by Mr. Beckett and by Carol Dison, an attorney in Mr. Beckett's office. An evidentiary hearing was scheduled for August 29, 2007. However, on August 7, 2007, Petitioner filed, through counsel, a Motion to Withdraw Claim of Ineffective Assistance of Counsel. In the Motion, Petitioner's counsel stated that he met with Petitioner on several occasions regarding his claim of ineffective assistance of counsel and also met with Mr. Alvarado. He stated that, after discussion of this issue, Petitioner moved to withdraw his claim of ineffective assistance of counsel with respect to Mr. Alvarado. This court granted the motion and vacated the evidentiary hearing.

Following a lengthy sentencing hearing which occurred over the course of several days, Petitioner was sentenced to a term of 235 months in the Federal Bureau of Prisons on each of the 11 counts, to be served concurrently. Petitioner appealed. On appeal, he was represented by Elisabeth Pollack, an attorney with Mr. Beckett's office. On November 10, 2010, the Seventh Circuit affirmed his conviction and sentence. United States v. Knox, 624 F.3d 865 (7th Cir. 2010). In doing so, the Seventh Circuit stated that "[Petitioner] was the mastermind of an extensive real estate scheme using grossly inflated property appraisals and false loan applications." The Seventh Circuit explained:

From 1998 to 2005, [Petitioner] orchestrated a multifaceted real estate 'flipping' scheme in central Illinois. The scheme was carried out in various ways but remained the same at its core. [Petitioner] would procure a property at a nominal price ($100 to $5,000) either by buying it himself or causing it to be purchased under someone else's name, usually without their knowledge or consent. He would then 'flip' the property by selling it to an unwitting buyer at an exorbitant price supported by fraudulent property appraisals that grossly inflated the property's value. [Petitioner] defrauded every party involved in these real estate transactions: he would tell property owners that he intended to sell their properties at their asking price, but would then turn around, jack up the price, and use the falsified appraisals to convince buyers to buy and lenders to extend mortgages on the substantially inflated property value. [Petitioner] would then pocket the difference between the seller's true asking price and the grossly exaggerated purchase price he had represented to the buyer, and pay kickbacks to his accomplices, which included [Petitioner's] codefendants Dennis Wiese, Jr., who conducted most of the appraisals, and Frank Kelly Ciota, who assisted [Petitioner] with finding unwitting buyers to defraud.

Knox, 624 F.3d at 867-68. The Seventh Circuit set out more details regarding the scheme and rejected Petitioner's challenges to the sentence imposed. Knox, 624 F.3d at 868-75.

As noted previously, Petitioner then filed, on July 20, 2011, his pro se Motion to Vacate, Set Aside or Correct Sentence (#1). Petitioner's Motion has been thoroughly briefed and is ready for ruling.

ANALYSIS

This court first notes that relief under 28 U.S.C. § 2255 is reserved for extraordinary situations. Prewitt v. United States, 83 F.3d 812, 816 (7th Cir. 1996), citing Brecht v. Abrahamson, 507 U.S. 619, 633-34 (1993). Accordingly, a petitioner may avail himself of relief under § 2255 only if he can "demonstrate that there are flaws in the conviction or sentence which are jurisdictional in nature, constitutional in magnitude, or result in a complete miscarriage of justice." Boyer v. United States, 55 F.3d 296, 298 (7th Cir. 1995). Based upon this standard, and the record in this case, this court agrees with the Government that Petitioner has not included any claims which would warrant an evidentiary hearing or relief under 28 U.S.C. § 2255.

INEFFECTIVE ASSISTANCE OF COUNSEL

In his pro se Motion and Memoranda in support, Petitioner has claimed that he was denied the effective assistance of counsel at various times during the proceedings. His first claim is that his trial counsel was ineffective for failing to notice that the superseding indictment failed to charge an offense and was impermissibly ambiguous. He argued that, because of these flaws, this court lacked subject matter jurisdiction. Petitioner's

second claim is that his counsel was ineffective for failing to realize that he was actually innocent of the charges against him. Petitioner next claimed that his sentencing counsel was ineffective for advising him to withdraw his objections to the amount of loss calculated in the presentence investigation report. Petitioner also argued that his counsel on appeal was ineffective for failing to raise the issue of the disparity of his sentence when compared to other defendants who committed similar crimes.

"The Sixth Amendment to the Constitution accords criminal defendants the right to effective assistance of counsel." Wyatt v. United States, 574 F.3d 455, 457 (7th Cir. 2009). To succeed on a claim of ineffective assistance, a petitioner must prove: (1) his attorney's performance fell below an objective standard of reasonableness; and (2) he suffered prejudice as a result. Strickland v. Washington, 466 U.S. 668, 678-88, 693 (1984); Wyatt, 574 F.3d at 457-58. With respect to the performance prong of the two-part test, a petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Wyatt, 574 F.3d at 458, quoting Strickland, 466 U.S. at 689. A petitioner "must establish the specific acts or omissions of counsel that he believes constituted ineffective assistance" and the court then determines "whether such acts or omissions fall outside the wide range of professionally competent assistance." Wyatt, 574 F.3d at 458. Regarding the prejudice prong of the two-part test, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694.

## 1. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Petitioner claims that his counsel was ineffective for failing to challenge the indictment against him. Rule 7(c)(1) of the Federal Rules of Criminal Procedure provides that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). The standard for the sufficiency of an indictment is settled law in the Seventh Circuit. "For an indictment to be legally sufficient, it must accomplish three functions: it must state each of the elements of the crime charged; it must provide adequate notice of the nature of the charges so that the accused may prepare a defense; and it must allow the defendant to raise the judgment as a bar to future prosecutions for the same offense." United States v. Fassnacht, 332 F.3d 440, 444-45 (7th Cir. 2003). This court concludes, as it did before, that the 42-page, factually detailed superseding indictment in this case clearly meets these requirements. This court also finds completely frivolous Petitioner's claim that the indictment "is false on its face" and was "defective by its ambiguity." Because the superseding indictment is sufficient, Petitioner's counsel was not ineffective for failing to challenge it.

Petitioner's second claim is that his counsel was ineffective for allowing him to plead guilty to the charges against him when he was actually innocent. Petitioner has presented a convoluted argument that he is actually innocent of the fraud charges because he did not personally prepare the false HUD-1 forms. Based upon the detailed factual basis for the guilty plea provided by the Government at the guilty plea hearing, which

Petitioner agreed was correct, this court concludes there is no reason to discuss this patently baseless argument.

Petitioner also claims that he was actually innocent of the money laundering charge, relying on United States v. Scialabba, 282 F.3d 475 (7th Cir. 2002) and United States v. Santos, 553 U.S. 507 (2008). This argument is frivolous as well.

In Santos, the defendant was convicted of one count of conspiracy to run an illegal gambling business, one count of running an illegal gambling business, one count of conspiracy to launder money and two counts of money laundering. Santos, 553 U.S. at 509-510. The defendant's convictions were affirmed on appeal. Santos, 553 U.S. at 510. The defendant filed a motion under § 2255, and the district court vacated the defendant's money laundering convictions based upon the Seventh Circuit's decision in Scialabba. Santos, 553 U.S. at 510. In Scialabba, the Seventh Circuit "held that the federal money-laundering statute's prohibition of transactions involving criminal 'proceeds' applies only to transactions involving criminal profits, not criminal receipts." Santos, 553 U.S. at 510, citing Scialabba, 282 F.3d at 478. The Seventh Circuit affirmed the district court's ruling, based upon Scialabba. Santos, 553 U.S. at 510.

The United States Supreme Court granted certiorari, and affirmed. Justice Scalia, joined by Justices Souter, Ginsburg, and Thomas, determined that the term "proceeds" in the money laundering statute was ambiguous because, "[f]rom the face of the statute, there is no more reason to think that 'proceeds' means 'receipts' than there is to think that 'proceeds' means 'profits.'" Santos, 553 U.S. at 514. Justice Scalia then stated, "[u]nder

a long line of our decisions, the tie must go to the defendant.  The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." Santos, 553 U.S. at 514.

Justice Stevens wrote a separate opinion concurring in the judgment.  Justice Stevens did not agree that the term "proceeds" meant the same thing in every situation. Santos, 553 U.S. at 525-26 (Stevens, J., concurring).  Justice Stevens stated that the Court did not need to "pick a single definition of 'proceeds' applicable to every unlawful activity."  Santos, 553 U.S. at 525 (Stevens, J., concurring).  For Justice Stevens, the meaning of "proceeds" should turn on whether legislative history indicates that Congress intended to reach the gross revenues of a specified crime.  Santos, 553 U.S. at 525-26 (Stevens, J., concurring); see also United States v. Lee, 558 F.3d 638, 643 (7th Cir. 2009). Justice Stevens concluded that the "revenue generated by a gambling business that is used to pay the essential expenses of operating that business is not 'proceeds' within the meaning of the money laundering statute."  Santos, 553 U.S. at 528 (Stevens, J., concurring).

Chief Justice Roberts and Justices Alito, Kennedy and Breyer dissented.  In his dissenting opinion, Justice Alito stated that, considered in context, it was clear that "the term 'proceeds' in the money laundering statute means gross receipts, not net income." Santos, 553 U.S. at 546 (Alito, J., dissenting).[1]

---

[1] This court notes that, in response to the decision in Santos, Congress amended § 1956 on May 20, 2009.  Following the 2009 amendment, "proceeds" is defined as "any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity."  18 U.S.C. § 1956(c)(9).

This court concludes that Petitioner does not have a legitimate argument based upon Santos. This court first notes that, "[g]iven the divergent views of the plurality and the concurrence, courts have debated the impact of Santos beyond illegal gambling cases." United States v. Rezko, 2008 WL 4890232, at *5 (N.D. Ill. 2008). This court recognizes, however, that the Seventh Circuit has applied the holding in Santos to offenses other than illegal gambling. See Lee, 558 F.3d at 641-45 (operation of spas which were fronts for prostitution); United States v. Hodge, 558 F.3d 630, 632-34 (7th Cir. 2009) (operation of a brothel); United States v. Malone, 484 F.3d 916, 921-22 (7th Cir. 2007) (drug conspiracy).

However, following Santos, the Seventh Circuit clarified and confirmed that the money laundering statute prohibits both concealment of net proceeds and "the reinvestment of net proceeds to promote the illicit activity." United States v. Aslan, 644 F.3d 526, 547 (7th Cir. 2011), quoting Lee, 558 F.3d at 642. In this case, Petitioner admitted to this court that he and Ciota engaged in financial transactions and converted the "profits from the fraudulent sales to their personal use" and "to promote the ongoing fraudulent scheme." Therefore, there can be no question that there were profits (net proceeds) from the fraudulent scheme which Petitioner converted and used for personal expenses and used to promote the illicit activity. Petitioner's conviction is perfectly proper under Santos. See Rezko, 2008 WL 4890232, at *6.

Petitioner has argued, at length, that this conclusion is wrong because the money used for down payments to promote the ongoing fraudulent scheme cannot be considered

"profits." This court disagrees because this use of the net proceeds to promote the illicit activity did, in fact, violate the money laundering statute. See Aslan, 644 F.3d at 547. This court concludes that Petitioner is not "actually innocent" of money laundering. Because this court has concluded that Petitioner was properly convicted of money laundering under Santos, Petitioner's argument that his trial counsel was ineffective for allowing him to plead guilty to the money laundering offense is without merit.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL AT SENTENCING

Petitioner has also argued that his counsel was ineffective at sentencing. Petitioner claims that his counsel was ineffective for advising him to waive his argument regarding the amount of the loss, which he had reserved the right to contest during the guilty plea hearing. According to Petitioner, his counsel informed him that this court would not give him acceptance of responsibility if he continued with his objection to the loss amount and advised him that he could raise the issue on direct appeal under the "plain error" standard. Petitioner did raise the issue on appeal, and the Seventh Circuit found the issue waived. The Seventh Circuit stated:

> Because the loss amount was greater than $2.5 million, Knox's base offense level was increased by 18 levels pursuant to U.S.S.G. § 2B1.1(b)(1). Knox initially filed an objection to this calculation in the presentence report, but withdrew the objection at the sentencing hearing. Before accepting the withdrawal, the court addressed defense counsel and Knox personally to confirm that he intended to withdraw

the argument. The court queried defense counsel, "Now you're withdrawing the 18-level objection because you believe [counsel] that the evidence shows more than $2.5 million?" Knox's attorney replied, "That's correct, Your Honor." The district court then asked Knox directly, "Mr. Knox, do you agree with that?," to which Knox relied, "Yes, Your Honor." The district court followed up, asking, "Anybody force you to say that? . . . Threatened you in any way? . . . Promised you anything to say that?" Knox replied, "No, sir." to each question. The district court then stated on the record that the objection was withdrawn. Despite this colloquy, Knox has now filed a pro se supplemental brief in which he challenges the district court's determination that the amount of the loss exceeded $2.5 million.

Knox, 624 F.3d at 875. The court then concluded that "Knox's statements on the record evince a knowing waiver as to the loss calculation issue" which precluded review of the issue. Knox, 624 F.3d at 875.

This court concludes that Petitioner's responses to this court's questions at sentencing belies his argument in this case. Petitioner agreed that the objection was withdrawn because the evidence showed a loss amount over $2.5 million and told this court that no promises had been made to him to get him to say that. Petitioner's claim that he waived his objection because he was told he could raise the issue on appeal as "plain error" is contradicted by the record and makes little sense. Most importantly,

Petitioner's claim fails because he has not shown that there was any valid objection to be made to the loss calculation in this case. Petitioner insists that he was not the "legal" cause of the loss because he did not prepare the false HUD-1 forms. Petitioner has relied on United States v. Miller, 962 F.2d 739 (7th Cir. 1992) and United States v. Morris, 80 F.3d 1171 (7th Cir. 1997). Petitioner argues that lenders would not have loaned the mortgage money without the HUD-1 forms so that no loss would have been incurred without the HUD-1 forms, which he did not prepare. Unfortunately for Petitioner, Morris and Miller do not support his argument. Both cases held that "the existence of intervening causes does not provide a basis for reducing the amount of loss." Morris, 80 F.3d at 1173 (emphasis added); Miller, 962 F.2d at 744. Petitioner was the "mastermind" of the extensive scheme in this case and admitted at the guilty plea hearing that he and his codefendants "caused substantial losses to various mortgage lenders and real estate sellers and buyers and caused buyers to file or face bankruptcy." Petitioner has not shown that there was any non-frivolous basis for objecting to the calculation of loss at sentencing. Therefore, this court concludes that Petitioner has completely failed to show that his counsel's performance fell below an objective standard of reasonableness or that he was prejudiced by any deficiency in his counsel's performance.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL

Petitioner also claims that his counsel was ineffective on appeal for failing to raise the issue of the disparity of his sentence when compared to other defendants who committed similar crimes. Petitioner noted that, during his sentencing hearing, his

counsel made comparisons to Conrad Black and George Ryan. His counsel argued that Black and Ryan committed crimes that were more serious and both received sentences of six and a half years. This court was not persuaded by this argument and imposed a sentence of 235 months, noting that Petitioner had numerous prior convictions, including a prior conviction in a case involving similar fraudulent conduct. Petitioner's counsel challenged his sentence on appeal but did not raise this issue.

"Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel." Stone v. Farley, 86 F.3d 712, 717 (7th Cir. 1996), citing Strickland, 466 U.S. at 687. Petitioner's conduct and criminal history are not comparable to Conrad Black or George Ryan and it was not ineffective assistance of counsel to fail to raise this issue on appeal.

CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, this court denies a certificate of appealability in this case. A certificate of appealability may issue only if the applicant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Therefore, a certificate of appealability should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This court concludes that jurists of reason would not find it debatable whether Petitioner's Motion states a valid claim of the denial of a constitutional right.

IT IS THEREFORE ORDERED THAT:

(1)  Petitioner's pro se Motion to Vacate, Set Aside, or Correct Sentence (#1) is DENIED.

(2)  Because Petitioner's Motion under § 2255 is completely without merit, Petitioner's additional motions (#4, #5, #6, #8, #9, #10, #11, #12) are also DENIED.

(3) Because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability is DENIED.

ENTERED this 27th day of February, 2012

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE